# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 06-228 (ESH)** |
| | : | |
| **v.** | : | |
| | : | |
| **JEFFREY S. MILLS,** | : | |
| **RODERIC L. BOLING, AND** | : | |
| **ANNA BOLING** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## UNITED STATES' MOTION *IN LIMINE* TO INTRODUCE INEXTRICABLY INTERTWINED EVIDENCE, AND EVIDENCE OF OTHER ACTS PURSUANT TO FED. R. EVID. 404(b), AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

The United States, by and through its attorney, the United States Attorney for the District

of Columbia, hereby respectfully moves for an Order *in limine* to allow the introduction at trial

of: (1) evidence of inextricably intertwined evidence to prove the charged offenses; and (2)

evidence of other acts pursuant to Fed. R. Evid. 404(b) to prove intent, knowledge, identity,

preparation, plan, background of the conspiracy, lack of mistake, motive, and modus operandi.[1]

## I.    BACKGROUND

On July 27, 2006, a federal grand jury returned a nine count indictment charging

defendants Jeffrey S. Mills, Roderic L. Boling and Anna Boling with conspiracy to commit

securities fraud and wire fraud (18 U.S.C. § 371), securities fraud (15 U.S.C. §§ 78j(b) and 78ff),

---

[1]By filing this motion, the United States in no way intends to identify all inextricably intertwined and intrinsic evidence it will introduce at trial. Indeed, the Federal Rules of Evidence do not require the United States to notify defendants of an intent to use intrinsic or inextricably intertwined evidence. United States v. Bowie, 232 F.3d 923, 928 (D.C. Cir. 2000). The United States, in an abundance of caution, merely intends to notify defendants of intrinsic and inextricably intertwined evidence which defendants may attempt to characterize as Rule 404(b) evidence.

and wire fraud (18 U.S.C. § 1343) in connection with their scheme to artificially inflate the market price and volume of the following publicly traded companies, and to fraudulently induce investors to purchase shares of the common stock of the following publicly traded companies: Maui General Stores, Inc. ("MAUG"), Innovative Food Holdings, Inc. ("IVFH"); Power3 Medical Products, Inc. ("PWRM"), Donini, Inc. ("DNNI"), and 5G Wireless Communications, Inc. ("FGWC"). The Indictment also charged that another purpose of the defendants' conspiracy was to conceal their criminal scheme and activities from the United States Securities and Exchange Commission, the securities markets, and the actual and prospective investors in the stock of MAUG, IVFH, PWRM, FGWC and DNNI.

The United States expects the evidence at trial to show that at various times in July 2004 through August 18, 2004, the defendants caused telemarketing firm Telephone Broadcast Company ("TBC") to broadcast fraudulent hoax voicemail messages containing the voice of Anna Boling to voicemail systems and answering machines throughout the United States, including within the District of Columbia. The defendants intended these messages to deceive prospective investors into believing they had inadvertently received a confidential stock tip intended for the close friend of the person leaving the voicemail message on their voicemail/answering machines.

Each message purported to be a message left by a woman for her close friend in which she attempted to convey to her close friend a stock tip from a "hot stock exchange guy" that she was or had been dating and whose previous stock tip had been accurate and very lucrative for her father. By design, each hoax message was made to appear to have been mistakenly left on the listener's answering machine or voicemail system rather than on the close friend's system or

2

machine.  In reality, as the defendants well knew, the fraudulent hoax voicemail messages were

broadcast to thousands of answering machines/voicemail systems throughout the United States.

As planned, the distribution of fraudulent hoax voicemails touting the stocks of MAUG, IVFH,

PWRM, DNNI and FGWC resulted in material increases in price and volume of each of the

stocks, and artificially inflated and manipulated the market for these stocks.

The following is an example of one of the voicemail messages that the defendants caused

to be distributed over the interstate wires:

> Hey Steph, it's Wendy.  I looked for your old number and I couldn't find it but
> Brady says this is your new one.  I hope it's the right one.  Anyway, remember
> Evan, that hot stock exchange guy I'm dating – he gave my dad that hot stock tip
> in June on SMSI and it went from a buck to like five bucks in two weeks and you
> were mad because I didn't call you?  Well, I'm calling you now.  There's this new
> company that supposedly developed some zillion dollar cancer test thing, and it's
> going to go up big this week – some patent thing, whatever that is.  Anyway, the
> stock symbol is P-W-R-M, and he says it gonna open cheap, like $2.50 – I'm
> sorry, I'm eating 'cause I'm starving – it's $2.50 now and it's going to take off
> after this weekend so get as much as you can.  Call me on my cell phone, okay.
> I'm still in New York.  Um, my dad and I are going to be buying a bunch
> tomorrow and the only people I told is Sam and Ellen–it's kind of a secret.  Okay,
> so give me a call or email me.  I love you.  Bye.

Contrary to the representations in the voicemail, the person leaving the message had not received

a stock tip from a hot stock exchange guy she was dating.  In addition, this non-existent stock

exchange guy had not previously given her father a hot tip on a stock that "went from a buck to

like five bucks in two weeks."  Moreover, the stock tip was not a secret.  In addition, the stock tip

did not disclose to recipients of the message that people who had caused the message to be

distributed were being compensated or had been promised compensation.  The stock tip also did

not disclose that people who had paid for the voicemail stock promotion or had promised

payment were selling stock into the promotion.

3

The defendants profited from their conspiracy and scheme to defraud.  Defendant Jeffrey Mills received more than 250,000 shares of IVFH stock for arranging the promotion of IVFH stock.  Mills sold more than 220,000 shares of this stock during the fraudulent stock promotion. Defendants Mills and Roderic Boling also received a bag of cash containing more than $40,000 at a Mississippi casino.  In addition, defendant Mills received a portion of the proceeds from the sale of MAUG stock during the fraudulent stock promotion.  Mills also had negotiated to receive a large number of shares of FGWC and DNNI stock which were ultimately not delivered. Meanwhile, various victims around the country lost money as a result of being fraudulently induced by the defendants' scheme to purchase the securities which the defendants fraudulently promoted.

## II.  THE EVIDENCE OF INEXTRICABLY INTERTWINED CONDUCT AND EVIDENCE OF OTHER ACTS THAT THE UNITED STATES SEEKS TO INTRODUCE AT TRIAL SHOULD BE ADMITTED INTO EVIDENCE.

The United States moves *in limine* to introduce evidence of the following conduct at trial to prove the charged offenses as well as intent, knowledge, preparation, plan, background of the conspiracy, lack of mistake, motive, modus operandi, and/or to prove the identity of the person's voice in the fraudulent hoax voicemails the defendants caused to be distributed in order to fraudulently promote the securities of MAUG, IVFH, PWRM, DNNI and FGWC:

(1)    Evidence of defendant Roderic Boling's and defendant Anna Boling's role in recording and distributing voicemails in the Summer of 2004 which concerned the installation of satellite television systems and travel packages.[2]

_____

[2]These voicemail messages appear to contain misrepresentations and falsehoods.

4

(2)     Evidence of Roderic Boling's substantial experience and involvement, during the period of late 2003 through July of 2004, in arranging for Telephone Broadcast Company to distribute voicemail messages which marketed satellite television and travel packages.[3]

(3)     Evidence of Roderic Boling's attempt to assist Jeff Mills in arranging a direct mailer stock promotion campaign shortly before the distribution of the fraudulent hoax voicemails described in the indictment.

(4)     Evidence of Jeffrey S. Mills' involvement in promoting securities with the following stock symbols:  MHPD, MFLW, WFMC, VDYI, ISIC, TOTG, GTRD, and FPGR.  At least one of these promotions occurred during the fraudulent voicemail scheme.

(5)     Evidence of efforts by Jeffrey S. Mills and/or another unindicted co-conspirator to make arrangements for people to get their stories together or for people to get on the same page.[4]

---

[3]A number of these voicemail messages appear to have contained misrepresentations or falsehoods.

[4]As discussed in the United States' Fed.R.Evid. 609 motion, Roderic Boling has a number of prior criminal convictions involving fraud, dishonesty, and misrepresentation. The government has attempted to obtain the full factual basis for these convictions, but has not yet received this information from Florida authorities.  It is possible that the factual basis of some or all of these prior convictions of defendant Roderic Boling could be relevant, probative Rule 404(b) evidence.  However, it is impossible for the United States to make this determination until the underlying factual basis for the convictions is received.  Once the United States receives the underlying factual basis for the underlying convictions, it will file an amended motion if it determines that the convictions do constitute relevant Rule 404(b) evidence and that the United States does intend to use such convictions in its case in chief.

A.    **Evidence of acts which are an "intrinsic" part of charged crime, or "inextricably intertwined" with a charged crime is admissible as direct proof of the crime and is not subject to Rule 404(b) analysis.**

Where the government offers evidence of an act that is part of the charged offense or part of the conspiracy alleged in the indictment, it is not an "other crime" which would be subject to Rule 404(b) and require a cautionary instruction.  United States v. Bowie, 232 F.3d 923, 929 (D.C. Cir. 2000); United States v. Badru, 97 F.3d 1471, 1474 (D.C. Cir. 1996)(evidence relating to earlier overseas smuggling trips did not fall within the scope of Rule 404(b) as "other bad acts" or "other crimes" evidence, but was directly relevant to the conspiracy charged as evidence going to the means, manner and modus operandi of the drug distribution scheme); United States v. Davis, 402 F. Supp.2d 252, 261 (D.D.C. 2005)(J. Roberts).  Some uncharged acts performed contemporaneously with the charged crime may be properly ruled intrinsic if they facilitate the commission of the charged crime.  Bowie, 232 F.3d at 929.  Similarly, evidence is intrinsic to the crime charged in the indictment if "it is an uncharged offense which arose out of the same transactions as the charged offense [or] if it was inextricably intertwined with the evidence regarding the charged offense.  Badru, 97 F.3d at 1474 (quoting United States v. Weeks, 716 F.2d 830, 832 (11th Cir. 1983)); Davis, 402 F. Supp.2d at 262.  It is well settled that evidence offered as direct evidence of a fact in issue, and not as circumstantial evidence requiring an inference regarding the character of the accused, is properly deemed intrinsic evidence not subject to Rule 404(b).  United States v. Alexander, 331 F.3d 116, 125 (D.C. Cir. 2003).  Likewise, even evidence of criminal wrongdoing that does not relate to specific dates or incidents charged in the indictment could be independently admissible as direct proof of charged offenses.  . if the evidence is of acts which are 'inextricably intertwined' with the charged crime."  United

States v. Morrow, 2005 WL 3159572 (D.D.C. 2005)(J. Kollar-Kotelly).  As will be explained

below, evidence of much of the conduct identified above should be properly admitted at trial as

intrinsic and inextricably intertwined evidence that is not subject to the strictures of Fed.R.Evid.

404(b).

> **B.      Rule 404(b) is a rule of inclusion which allows the admission of other acts
> and other crimes evidence as long as it is offered for a proper purpose and is
> not offered solely to prove character.**

It is well settled that evidence of other crimes, wrongs or acts is admissible under Fed. R.

Evid. 404(b) if offered for a permissible purpose such as proof of intent, motive, opportunity,

plan, knowledge, identity or absence of mistake or accident. United States v. Miller,  895 F.2d

1431, 1436 (D.C. Cir. 1990), cert. denied, 498 U.S. 825 (1990).  "[U]nder Rule 404(b), any

purpose for which bad acts evidence is introduced is a proper purpose so long as the evidence is

not offered solely to prove bad character." Id.  Rule 404(b) is a Rule of "inclusion rather than

exclusion," Bowie, 232 F.3d at 929, and it excludes only evidence that "is offered for the sole

purpose of proving that a person's actions conformed to his or her character." United States v.

Long, 328 F.3d 655, 661 (D.C. Cir. 1993); Miller, 895 F.2d at 1436.  In a conspiracy prosecution,

a legitimate purpose under Rule 404(b) for introducing "extrinsic acts" is to provide background

in order to show association, background as to how the criminal relationship developed, and to

complete the story of the crimes charged.  See, United States v. Mathis, 216 F.3d 18, 26 (D.C.

Cir. 2000), cert. denied, 531 U.S. 972 (2000)(quoting United States v. Williams, 205 F.3d 23, 23-

34 (2d Cir. 2000); United States v. Rosa, 11 F.3d 315, 334 (2d Cir. 1993).

In determining whether other crimes, wrongs, or acts evidence is admissible, the Court

undertakes a two part analysis. First, the Court considers whether the evidence is "probative of

some material issue other than character." United States v. Clarke, 24 F.3d 257, 264 (D.C. Cir.

1994).   If the Court deems the evidence to be relevant, the Court should exclude the evidence

only if its probative value "is substantially outweighed by the danger of unfair prejudice." Fed. R.

Evid. 403; United States v. Day, 591 F.2d 861, 878 (D.C. Cir. 1978); see also Huddleston v.

United States, 485 U.S. 681, 686 (1988).   In close cases, the rule tilts toward the admission of the

uncharged evidence.   Miller, 895 F.2d at 1436; see, United States v. Johnson, 802 F.2d 1459,

1464 (D.C. Cir. 1986)("the balance should be generally struck in favor of admission when the

evidence indicates a close relationship to the event charged").   The D.C. Circuit has recognized

that "Rule 404(b) evidence will often have . . .multiple utility showing at once intent, knowledge,

motive, preparation and the like."   United States v. Crowder, 141 F.3d 1202, 1208 (D.C. Cir.

1998)(en banc), cert. denied, 525 U.S. 1149 (1999).   As detailed below, in this prosecution

evidence of the conduct identified above is highly probative and particularly relevant to establish

intent, knowledge, preparation, plan, lack of mistake, modus operandi, and, in the case of the

prior recording of voicemails, to prove the identity of the person's voice in the fraudulent hoax

voicemails.

### C.   SPECIFIC EVIDENCE

#### 1.   Evidence concerning Roderic Boling's and Anna Boling's role in recording and distributing voicemails in the Summer of 2004 which concerned the installation of satellite television systems and travel packages should be admitted.

Arguably, evidence concerning Roderic Boling's and Anna Bolings role in recording and

distributing voicemails in the Summer of 2004 concerning the installation of satellite television

systems and travel packages, is admissible as intrinsic evidence and evidence of inextricably

intertwined conduct. If it is not, it is relevant Rule 404(b) evidence. This evidence probatively demonstrates their modus operandi in conducting their telemarketing business which included their recording and distribution of the fraudulent hoax voicemails charged in the indictment. The evidence is also certainly relevant and probative to proving background of the conspiracy, and how the criminal relationship developed. In addition, the evidence of the Bolings' conduct in recording and distributing the voicemails in the Summer of 2004 presents a textbook example of evidence which should be admitted under Rule 404(b) to prove intent, knowledge, preparation, plan, lack of mistake, modus operandi, and the identity of the person's voice in the fraudulent hoax voicemails.

The proposed evidence concerning the recording and distribution of voicemails in the Summer of 2004 is highly probative of Roderic and Anna Boling's knowledge, intent, preparation, plan and lack of mistake in committing the offense charged in the indictment. These very short voicemails (approximately less than one minute each) were recorded and distributed very close in time to the voicemails charged in the indictment, and contain misrepresentations. In addition, the United States expects to prove at trial that in many important respects the defendants recorded and distributed these voicemails utilizing the same procedures as they used in distributing the fraudulent hoax voicemails described in the indictment. Anna Boling used her voice to make the satellite television voicemails, and caused the voicemails to be loaded onto the onebox system. The United States expects to prove that at least one or more of the voicemails were recorded on the onebox system from Bolings' home just as the fraudulent hoax voicemails charged in the indictment were recorded. In addition, each of these voicemails were distributed by Telephone Broadcast Company as arranged in part by Roderic Boling. The United States also

9

anticipates that the evidence will show that Roderic Boling wrote the script for the voicemails concerning the installation of satellite television systems. In sum, evidence of defendants Roderic and Anna Boling's involvement in creating and distributing these voicemails powerfully demonstrates that each knew, understood and intended voicemails provided to the Telephone Broadcast Company to be widely distributed using telemarketing equipment.

The evidence is also extremely probative of the identity and roles of the persons involved in creating and distributing the fraudulent hoax voicemails described in the indictment. Unlike standard voice exemplars which are made in a formalistic environment, the satellite and travel package voicemails were recorded in much the same way as the fraudulent hoax voicemails. The United States anticipates that the evidence will show that Roderic and Anna Boling did not conceal their involvement in making the satellite and travel package voicemails as they attempted to do with the fraudulent hoax voicemails described in the indictment. In addition, if defendant Anna Boling refuses to stipulate that she recorded the voicemails described in the indictment, the United States intends to call a witness with personal knowledge that Anna Boling recorded the satellite television voicemails to establish that the satellite television voicemails also constitute an extremely reliable voice exemplar for Anna Boling. The satellite voicemails and the travel package voicemails will constitute significant and necessary evidence of the identity of the voice in the fraudulent hoax voicemails described in the indictment.

The highly probative nature of the satellite and travel package voicemail evidence is not substantially outweighed by any danger of "unfair prejudice." As the proceeding summary of one of the satellite voicemails demonstrate, the voicemails, which have been produced in discovery, are not highly inflammatory:

Hey this is Laura from customer service, um, I've been trying to reach you to arrange for one of my installers to come by and install your new digital satellite TV system, um, it says here all of the costs of your equipment and delivery is free and it looks like you are getting free digital satellite TV receivers, a satellite TV mini disk, and a $49 credit toward your first month's bill.  Oh, and your professional installation is also free there is no cost to you at all. Um you're probably some sort of referral from a friend or family. Anyway, to schedule your satellite TV installation, press 9 now.  Remember there is no cost to you so press 9 now. If you already received your system or you're no longer interested, press 8 now.

In addition, because each of these voicemails is extremely short, the evidence concerning these voicemails will be brief and will primarily come in through witnesses the United States intends to call at trial regardless of whether this particular evidence is introduced.  Any possible prejudice caused by the introduction of this evidence can be eliminated through a proper limiting instruction at trial.

>    **2.    Evidence of Roderic Boling's substantial involvement and experience in arranging for the telemarketing services of the Telephone Broadcast Company to distribute voicemails in 2003 and 2004 should be admitted.**

It is anticipated that evidence will be introduced at trial concerning the business relationship between Roderic Boling and Michael O'Grady[5], and Roderic Boling's substantial involvement in 2003 and 2004 in arranging for the telemarketing services of the Telephone Broadcast Company to distribute voicemails which marketed satellite television and travel packages.  This evidence constitutes classic intrinsic evidence and evidence of inextricably intertwined conduct which is admissible without application of Rule 404(b) analysis.  This evidence probatively demonstrate Roderic Boling's modus operandi in conducting his

_____

[5]Part of this business relationship was a history of cash payments being made to TBC for the distribution of voicemail messages for a company partially owned by defendant Roderic Boling.  The periodic cash payments TBC received for distributing voicemails for the company partially owned by Roderic Boling supplemented non-cash compensation TBC also received.

telemarketing activities which eventually included the recording and distribution of the fraudulent hoax voicemails charged in the indictment. The evidence is also certainly relevant and probative to proving background of the conspiracy, and how the criminal relationship between Michael O'Grady and Roderic Boling developed. In addition, the evidence of the Boling's involvement in 2003 and 2004 in arranging the telemarketing services of TBC to distribute voicemails which marketed satellite television and travel packages is also clearly admissible under Rule 404(b) to prove intent, knowledge, preparation, plan, lack of mistake, motive, and modus operandi.

The United States expects that among other things, the evidence will highlight the fact that defendant Roderic Boling asked for certain procedures to be followed when it came to the distribution of the fraudulent hoax voicemails, which had the intended effect of hiding his involvement in the distribution of these voicemails and which Boling had not requested to be followed in earlier dealings. These efforts of concealment are highly probative of defendant Roderic Boling's knowledge, intent, and lack of mistake. Moreover, defendant Boling's prior dealings with TBC, and the fact that a substantial sum of money was owed to TBC from these dealings, also provides some additional evidence of motive.

The probative nature of this proposed evidence is not substantially outweighed by any danger of "unfair prejudice. In addition, this evidence will not be voluminous, will not materially delay the trial, and will be presented through witnesses the United States intends to call at trial even if this evidence is not introduced.

_____**3.**     **Evidence of Roderic Boling's attempt to assist Jeff Mills in arranging a direct mailer stock promotion campaign shortly before the voicemails were distributed should be admitted.**

The United States expects to introduce very brief evidence at trial that shortly before the fraudulent hoax voicemails were distributed, Roderic Boling attempted to assist Jeff Mills in arranging a direct mailer stock promotion campaign.  This evidence should be admitted as intrinsic evidence and inextricably intertwined evidence that provides an important window into the early stages of the conspiracy, proof of how the criminal relationship developed, and proof of intent, knowledge, plan, agreement between Mills and Roderic Boling,  preparation, and absence of mistake.  Because this evidence is offered to prove the background of the criminal relationship, intent, knowledge, plan, agreement between Mills and Roderic Boling, preparation, and absence of mistake, it is also admissible under Rule 404(b).   The probative nature of this evidence is  not substantially outweighed by any danger of  "unfair prejudice, and its introduction will not materially delay the trial or cause the United States to call additional witnesses.

_____**4.**     **Evidence of defendant Jeffrey S. Mills' involvement in promoting other publicly traded securities.**

_____The United States anticipates introducing limited evidence of Jeffrey S. Mills' involvement in the promotion of certain securities before, during, and after the fraudulent voicemail scheme charged in the indictment.  This evidence constitutes probative evidence of Jeffrey Mills' knowledge, intent, plan and preparation to promote stocks.  The evidence will demonstrate that defendant Mills knew, understood and intended for the fraudulent voicemail promotions to artificially increase the price and volume of trades of the stocks for which the voicemail promotions were done.  The evidence will further help prove that defendant Mills'

understood that people who hired him to do stock promotions did so to cause increases in the

price and volume of the securities which were promoted.  The evidence will also demonstrate

defendant Mills' own motive to make money from stock promotions.  The evidence will help

establish that defendant Mills had a sophisticated understanding of the securities markets and the

stock promotion business.  As such, this evidence of defendant Mills' involvement in other stock

promotions is highly probative of his knowledge, intent, lack of mistake, motive, plan, and

preparation, and is admissible under Rule 404(b).   The probative nature of this evidence is  not

substantially outweighed by any danger of  "unfair prejudice, and its introduction will not

materially delay the trial.

> **5.**    **Evidence of attempts by Jeffrey Mills and/or at least one unindicted co-conspirator to make arrangements for people to get their stories together.**

The United States anticipates introducing evidence at trial concerning attempts by Jeffrey

Mills and/or at least one other unindicted co-conspirator to arrange a meeting in which people

could get their story together or to contact people to get them on the same page with Mills.

These attempts occurred very shortly after the distribution of the fraudulent hoax voicemails, and

were done over the telephone.  Since the indictment in this case includes as one of the purposes

of the charged conspiracy "to conceal these criminal activities from the United States Securities

and Exchange Commission. . . ," there is no doubt that this evidence constitutes evidence of the

charged conduct, and is intrinsic, inextricably intertwined evidence of the criminal activity.  This

evidence is also powerfully probative of defendant Mills' knowledge and criminal intent.

Moreover, the probative nature of this evidence is  not substantially outweighed by any danger of

"unfair prejudice," and its introduction will not materially delay the trial or result in additional

witnesses being called to testify.  Accordingly, the evidence should be admitted at trial as intrinsic evidence.  Alternatively, the evidence is also admissible under Rule 404(b).

III.    **CONCLUSION**

For the reasons set forth herein, as well as such reasons that may be stated orally at any hearing or in a Reply Memorandum, the United States respectfully requests that it's Motion *in Limine* to Introduce Inextricably Intertwined Evidence, and Evidence of Other Acts Pursuant to Fed. R. Evid. 404(b) be Granted and that the United States be permitted to introduce at trial the evidence generally described in this Motion and Memorandum.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
for the District of Columbia


By:     _____
TEJPAL S. CHAWLA
D.C. Bar No. 464012
Jonathan R. Barr
D.C. Bar No. 437334
Assistant U.S. Attorneys
555 4th Street, N.W.
Washington, D.C.  20530
(202) 353-2442 (Chawla)
(202) 514-9620 (Barr)