UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| v. | * | CR. NO. 06-228-03(ESH) |
| | * | |
| | * | |
| ANNA BOLING | * | |

*******************************************

**DEFENDANT ANNA BOLING'S**
**MOTION FOR SANCTIONS**

Comes now Defendant Anna Boling, by and through counsel, and respectfully asks the Court to impose sanctions on the prosecutor for a shocking and potentially dangerous publication to codefendants of a transcript of statements she alleged made in a confidential "off the record" debriefing by exercising the supervisory powers of the court by dismissing the charges against her, or, in the alternative, severing her case from the codefendants and/or excluding all use for any purpose of the statements she made in an off the record debriefing under a debriefing agreement which the government has breached in both spirit and fact. In support of her motion defendant states the following:

1. The prosecution proposed and the defendant agreed to an "off the record debriefing" with the stated expectation that "if the government was satisfied with her proffer it would drop the charges against her." Government counsel had been informed of the nature of her intended proffer at the time of his invitation.

2. It is the twenty plus year experience of defendant's counsel that the Office of the United States Attorney for the District of Columbia scrupulously preserves the confidentiality of persons who engage in "off the record" debriefings, both for the protection of the party and to ensure the continued willingness of parties to engage in these discussions.

3. Knowing the serious consequences of a conviction of this charge and fearing for the welfare of her young children, the defendant wished to do everything possible to resolve the

matter without going to trial. In reliance on the experience of her counsel, and the terms of an "off the record" debriefing agreement, the defendant engaged in a lengthy meeting with the prosecution in which she freely answered all questions openly and forthrightly.

4. The meeting did not result in the government's dismissing the charges against the defendant. The prosecution indicated that it was not satisfied with the defendants representations primarily as to her statements about the involvement of her ex husband but was unable or unwilling to point to any specific fact to which they had contrary information or proof.

5. The written agreement between the parties did not specifically state that the "off the record" meeting would be kept confidential however it is the usual and ordinary practice of the United States to do. Most Assistants Untied States Attorneys have stated that it is their primary duty to protect the safety and confidentiality of any person who speaks to them in an "off the record" debriefing.

6. Although the parties herein were unable to reach an agreement the government made no allegation that the defendant engaged in wrongdoing during or after the meeting. The defendant understood and relied on the representations that her statement would not be used against her at trial except to impeach her or any other witness who testified contrarily on her behalf at trial.

7. On Wednesday, April 4th, at minutes before 5PM the prosecutors sent a facsimile transmission addressed to all defense counsel, which included a five page purported ***transcript of the defendant's "off the record" debriefing including inculpatory statements alleged to have been made concerning codefendants.***[1]

8. This unconscionable, unprecedented disclosure has the potential to jeopardize the personal safety as well as the physical and emotional health of the defendant and her children. It has seriously undermined the attorney- client relationship with counsel. It has unfairly revealed her defense strategy to her codefendants as well as given them ammunition with which to anticipate and undermine her defense.

9. Although the government suggests that it is operating out of an "abundance of caution" in meeting its discovery obligations, there are no discoverable statements or matters in

---

[1] Nothing herein should be misconstrued as an acquiescence in the accuracy of the document submitted by the prosecutors or a waiver of objections to it.

the statement. Any minor exculpatory matters regarding her ex-husband could have been disclosed in a redacted version including a few sentences. The only creditable purpose for the government's actions are to gain tactical advantage over the defendant by undermining her defense, alienating the codefendants and hoping someone will plead out as a result of the disclosure.

10. This is "use" of her statement against her and it violates the written off the record agreement. Further it represents a complete deviation from the standard practice of the United States Attorney's Office, virtually unheard of by every member of the defense bar contacted.[2] In no way did the written agreement or the conversations before during and after the session indicate that this debriefing was in any way different from the dozens of other counsel has participated in.

11. The damage cannot be undone but the Court has the ability under its supervisory powers to remedy and partially ameliorate this travesty. The defendant requests that the case be dismissed for prosecutorial misconduct. In the alternative that her motion for severance be granted and that the government be denied any use of the alleged "off the record" statement for any purpose, including impeachment of the defendant or any other witness.

**ARGUMENT**

**I. The Government's Disclosure is Shocking to the Conscience.** The Government has an ethical and moral obligation to keep confidential statements made in off the record debriefings. Especially when, as here, the confidential informant is a defenseless young woman. Under no circumstances would the defendant have spoken with the Government had she known that her statements would be used against her in such a callous and vicious way. Due process of law is a summarized constitutional guarantee of respect for those personal immunities which, as Mr. Justice Cardozo twice wrote for the Court, are "so rooted in the traditions and conscience of our people as to be ranked as fundamental," *Snyder v. Massachusetts, 291 U.S. 97, 105*, or are *"implicit in the concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 325.Rochin v. California*, 342 U.S. 165, 172-73, 72 S. Ct. 205, 96 L. Ed. 183 (1952)**.** The defendant submits that her case should therefore be dismissed.

---

[2] Including A.J. Kramer and Reita Pendry long time supervisor of the Federal Public Defender's Office overseeing hundreds of cases involving codefendant's and confidential "off the record" debriefings.

**II.    The Disclosure of the Statement to the Codefendants Undermines the Defendant's Ability to Get a Fair Trial.**  With the statement revealed to her codefendants, the defendant is subject to the untenable position of having three prosecutors.  The disclosure gives the codefendants an unfair advantage, incentive and opportunity to manipulate evidence in anticipation of her case.  Severance is an appropriate remedy within the Courts discretion.

**III.    Exclusion of the Statement for any Purpose is an Appropriate Sanction Available through the Courts Supervisory Powers.**  Although not a complete remedy for the problem facing the defendant, the exclusion of the statement for any purpose including impeachment would be a reasonable compromise resolution.  This remedy is within the Courts supervisory powers.

Federal courts may use their supervisory power in some circumstances to exclude evidence taken from the *defendant* by "willful disobedience of law." *McNabb* v. *United States*, 318 U.S. 332, 345 (1943); see *Elkins* v. *United States*, 364 U.S. 206, 223 (1960); *Rea* v. *United States*, 350 U.S. 214, 216-217 (1956); cf. *Hampton* v. *United States*, 425 U.S. 484, 495 (1976) (POWELL, J., concurring in judgment). The civilized conduct of criminal trials cannot be confined within mechanical rules. It necessarily demands the authority of limited direction entrusted to the judge presiding in federal trials, including a well-established range of judicial discretion, subject to appropriate review on appeal, in ruling upon preliminary questions of fact. Such a system as ours must, within the limits here indicated, rely on the learning, good sense, fairness and courage of federal trial judges." *Nardone v. United States*, 308 U.S. 338, 342( U.S. 1943).

When the government seeks to obviate the privilege against self-incrimination, it should do so with greater care than was used here. Ambiguous phrases such as "off the record" should not be used. The terms of conferences in which potentially incriminatory information is given by a person subject to investigation should be spelled out with particular clarity. The government should be required to disclose in advance  when it intends to deviate from its usual practice and reveal to codefendant's the content of statements made in off the record debriefings.  When the government fails to do this, it is not unreasonable or unfair to hold that it should suffer the consequences of ambiguity. *United States v. Lyons,* 670 F.2d 77, (7th Cir. Ill. 1982).

Settled principles indicate that  "due process not only 'requires that the government adhere to the terms of any plea agreement or immunity agreement it makes,' but also requires [the court] to construe agreements strictly against the government in recognition of its superior bargaining power . . ." *United States v. Pelletier,* 898 F.2d 297, 302 (2d Cir. 1990) (citations omitted)); see also *Dudden*, 65 F.3d at 1467 ("If there is any ambiguity in the language of the immunity agreement, the ambiguity will be resolved against the government."); *Rowe v. Griffin*, 676 F.2d 524, 526 n.4 (11th Cir. 1982)  ("Ambiguity over the terms of such a promise [of

immunity] should be resolved in favor of the criminal defendant.").*United States v. Oruche*, 257 F. Supp. 2d 230 (D.D.C. , Walton, J.)

    Wherefore, for reasons stated above and any appearing to the Court, the defendant prays that her motion be granted.

                                                              Respectfully Submitted,

                                                              _____

                                                              Joanne Roney Hepworth
                                                              601 Pennsylvania Avenue, NW
                                                              Suite 900
                                                              Washington, D.C. 20004
                                                             (202)789-0037
                                                             Fax 301-3203948
                                                             Attorney for Anna Boling

## CERTIFICATE OF SERVICE

    I, hereby, certify that a copy of the foregoing was, served electronically on all parties , on this 7th day of April, 2007.

                                                             _____

                                                             Joanne Roney Hepworth

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| v. | * | CR. NO. 06-228-03(ESH) |
| | * | |
| | * | |
| ANNA BOLING | * | |

**ORDER**

Upon consideration of Defendant Anna Boling's Motion for Sanctions**, t**he Government's opposition thereto, the evidence adduced at a hearing thereon and the entire record herein, it is on this _____ day of _____,

**ORDERED,** that said motion is hereby **GRANTED**.

The Sanctions are:_____
_____
_____
_____
_____. **SO ORDERED.**

 

_____
ELLEN SEGAL HUVELL
United States District Judge
For the District of Columbia

Case 1:06-cr-00228-ESH    Document 85    Filed 04/07/2007    Page 7 of 7