UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | Cr. No.  06-228-01 (ESH/JMF) |
| | ) | 06-228-02 (ESH/JMF) |
| Jeffrey S. Mills, | ) | 06-228-03 (ESH/JMF) |
| Roderic L Boling, and | ) | |
| Anna Boling. | ) | |
| | ) | |

### DEFENDANT ANNA BOLING'S
### MOTION TO DISMISS COUNTS THREE THROUGH NINE OF THE INDICTMENT AND TO DISMISS IN PART COUNT ONE

Pursuant to Fed. R. Crim. Pro. 12(b)(3)(B), Defendant Anna Boling hereby moves this Honorable Court to dismiss Counts Three through Nine of the indictment, inclusive, as well as all portions of Count One that allege conspiracy to commit wire fraud, including but not limited to paragraph 11(B) of the indictment. These counts should be dismissed because the Government has failed to allege, and cannot allege, a claim of wire fraud based on the facts set forth as constituting the alleged scheme here.  Specifically, it has not made an allegation that Ms. Boling acted with specific intent toward an identifiable victim, which is a necessary element of a wire-fraud charge.[1]

---

[1] Wire fraud is codified at 18 U.S.C. § 1343, which states in relevant part:

     Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

I.  *Standard of Review*

Pursuant to Fed. R. Crim. Pro 7(c)(1), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Thus, the failure of an indictment to state an element of the offense is fatal. *United States v. Nance*, 533 F.2d 699 (D.C. Cir. 1976); *see also United States v. Debrow*, 346 U.S. 374 (1953); *United States v. Pickett,* 353 F.3d 62 (D.C. Cir. 2004). And an indictment whose language merely tracks the statutory language without alleging specific facts is not sufficient. *Nance*, 533 F.2d at 701.

II.  *Analysis*

    A. *Failure of indictment to allege the defendants intended to defraud any identifiable victim*

The indictment in this case is fatally flawed because it does not allege that the defendants intended to defraud any identifiable victim or class of victims. To be clear: The defense is not asserting that the indictment must specify an amount of loss to any particular victim. The defense is also not asserting that the indictment must allege, or that the Government must prove at trial, that an intended victim of the alleged scheme was actually defrauded in order to properly obtain a wire fraud conviction. This last statement brings into clarity the argument here. As a conceptual matter, in order for a scheme to defraud to exist in the first instance, there must be an intended victim. Without an intent to defraud <u>someone</u>, there simply is no scheme to defraud at all. There must be at least an <u>intended</u> victim contemplated in order to satisfy the element that a "specific intent to deceive or defraud" exists in a wire fraud case, whether that victim was ultimately defrauded

2

or not.  It is on this element that the indictment stumbles because it merely alleges an intent to defraud "the market," not a particular victim or victims.

The Ninth Circuit recently reached the conclusion that a scheme to defraud must have an intended identifiable victim in *United States v. Milwitt,* 475 F.3d 1150 (9th Cir. 2007), relying on *McNally v. United States*, 483 U.S. 350 (1987). Milwitt was accused of bankruptcy fraud, and the Court of Appeals analyzed the law of mail and wire fraud to interpret the similarly worded bankruptcy provision. The indictment there alleged that the defendant had constructed a scheme in which, though not an attorney, the tenants paid him to represent them in actions against their landlords.  He then filed petitions for bankruptcy on behalf of the tenants.  The indictment alleged that this constituted a fraud <u>against the landlords</u>, because as creditors they would be deprived by the allegedly fraudulent bankruptcy petitions of money otherwise owed them.  The Government attempted to prove at trial, however, that the fraud was perpetrated <u>against the tenants</u>, as they were deprived of money they thought was paying for legal services.  The Court of Appeals reversed the conviction, holding:

> The specific intent to deceive or defraud element of the mail and wire fraud crimes requires the prosecution to prove that the defendant intended to defraud an identifiable individual.  In *McNally v. United States*, 483 U.S. 350 (1987), the Supreme Court held that the mail fraud statute only reached the loss of money and property and not to "the intangible right of the citizenry to good government." *Id.* at 356 (overruled on this point by 18 U.S.C. § 1346). There, the indictment identified the scheme as devised "to defraud the citizens and government of Kentucky." *Id.* at 353. In reversing the mail fraud convictions, the Court noted that for the jury instruction to charge a crime under the mail fraud statute, it must show a loss of money or property from "the Commonwealth itself," the victim identified in the

3

> jury instructions. *Id.* at 360. Further, the government could not rely on evidence of the loss of property to another individual to support the conviction because that individual had not been identified in the jury instructions. *Id.* at 361.
>
> We applied *McNally* in *United States v. Mitchell*, 867 F.2d 1232 (9th Cir. 1989), a case involving an alleged scheme to defraud a city and its citizens. In reversing the conviction, we held that "[a]lthough both indictments alleged a scheme to obtain money and property, neither alleged a scheme to obtain them from the governmental body." *Id.* at 1233. Similarly, in *United States v. Lew*, 875 F.2d 219 (9th Cir. 1989), we cited *McNally*, stating that "the Court made it clear that the intent must be to obtain money or property from the one who is deceived." *Id.* at 221.

*Milwitt*, 475 F.3d at 1156.

The Ninth Circuit's conclusion makes sense because the wire fraud statute is a property based codified crime, not a general fraud common-law crime. The essence of federal wire and mail fraud is that the defendant is attempting to take someone else's property by deceit; therefore it is an inherent element that the defendant must have a victim in mind, otherwise the defendant cannot formulate the intent for the deception to obtain the desired property. One does not formulate intent to defraud in the abstract; divorced from any conception of the property to be obtained and from whom.

Support for the conclusion in *Milwitt* can be gleaned from *McNally* as the Ninth Circuit did, and also from the other seminal Supreme Court case interpreting the mail and wire fraud statutes, *Carpenter v. United States*, 484 U.S. 19 (1987). *McNally* generally holds, of course, that the mail and wire fraud statutes protect only property rights, and not an intangible right of honest services. *McNally, 483 U.S.* at 356. However, the analysis in *McNally* sheds some light on the question

raised here. The Supreme Court there noted that the original purpose of the mail fraud statute was to protect people from schemes <u>aimed at depriving them of their money or property</u>. *Id.*

Further, the Court could have suspended its analysis upon finding that honest services were not a protected property right. Instead, however, the Court went on to comment about whether – had there been a different alleged intended victim – a proper mail and wire fraud charge might have been possible. The Court noted that the indictment did not allege that the Commonwealth of Kentucky itself was the intended victim through a scheme either to drive up its insurance premiums or to deprive it of control over the expenditure of its funds. Because that was not the charge put forward in the indictment, the Court said the case as put to the jury "permitted a conviction for conduct not within the reach of § 1341." *Id.* at 361. In commenting on this possible alternative construction <u>of the facts,</u> however, the Court is demonstrating that the identification of the intended victim is a large driver in determining whether the acts alleged in the indictment constitute a violation of the mail and wire fraud statute or not.

Similarly in *Carpenter*, while the holding of the case is that the confidential business information of the Wall Street Journal constituted property for purposes of the mail and wire fraud statute, other aspects of the Court's reasoning point to the conclusion reached in *Milwitt*. In *Carpenter*, the Court noted that one of the petitioners' claims was that their activities did not constitute an effort to defraud the Journal. *Carpenter*, 484 U.S. at 25. The Court rejected that argument, saying

5

that because the defendant Winans had known of the Journal's practice in keeping the business information confidential, but was "pretending to perform his duty of safeguarding it," and merely "played the role of a loyal employee," the district court's finding of "the required specific intent to defraud is strongly supported by the evidence." *Id.* at 28. In doing so, the Court affirmed the view that the crux of the proposed mail fraud scheme was that the defendant intended to deprive the Journal of its property. The Court used the evidence of Winans' breach of fiduciary duty to support the conclusion that it was in fact the Journal that was the intended victim of the scheme. Thus, in both *Carpenter* and *McNally*, the Court analyzed whether there was a scheme to defraud, *i.e.*, whether the defendant had an intended victim who was holding a property right that was the object of the defendant's desire, in addition to determining whether a property interest was at stake.

It may seem strange, but on further reflection is perhaps not unusual that *Milwitt* is the first case to directly address the question of whether an identifiable victim or class of victims is a required subpart of the "intent to deceive or defraud" element of mail and wire fraud. In the vast majority of mail and wire fraud cases prosecuted, the identity of the intended victim is readily apparent.

That is not the case here, however. The Government's theory of the case and its factual description of the alleged offense here posit a case of intended fraud "on the market," not a case in which the defendants desired to deceive a particular individual or even a particular class of individuals in order to take their property

6

from them.  For example, Paragraph 11(B) alleges conspiracy to commit wire fraud, parroting the language of the statute, but names no intended victim(s) of the scheme.  Paragraph 12 asserts that the fraud was aimed at "investors."  Paragraph 13 names as victims "prospective investors."  Paragraphs 14 and 17 name "unwitting investors," and Paragraph 19 adds "unwitting prospective investors."  This is tantamount to saying that every adult in the United States who might be interested in buying stock was the intended victim of the scheme.  Indeed, there is potentially no limitation on who might be an "unwitting investor." It would presumably include every individual over the age of majority worldwide, as well as all corporations, trusts, foundations, etc., that have the capacity to purchase and own stock.

Paragraphs 43 through 53 and paragraph 63 do identify specific individuals who allegedly received the voicemail messages.[2]  However, the indictment does not allege that these individuals were the intended victims either.  Rather, the Government's theory here is that the defendants engaged in a widespread dissemination of allegedly false information in order to cause the investing public to act and thereby drive up the price of certain stocks, not that the defendants intended to obtain money from the persons named as receiving the voicemails in paragraphs 43 through 53.

In sum, the Government has alleged in this indictment facts that make out a potential securities-fraud claim, although Ms. Boling asserts her innocence of that

---

[2] Although to say they are named would be an overstatement.  The individuals are identified only by their initials.

7

charge and will challenge the case at trial. Frauds perpetrated on "the market" or "investors" fall properly within the ambit of the securities-fraud laws. But that does not mean that the same alleged factual scheme also constitutes a wire fraud violation. Wire fraud is a property based crime, requiring a specific intent to deceive or defraud a victim of property owned by that victim. That is not what is alleged in this case.

Finally, because the defect in this indictment is grounded in the essential character of the factual allegations, the defect cannot be remedied. The Government does not and cannot allege - based on the set of facts it claims constitutes the scheme in this case - that the defendants or any of the unindicted co-conspirators intended to defraud a specific person or class of persons of property that those persons owned. Rather, it is Government's theory of the case that the defendants, and others, engaged in a course of conduct designed to increase the price of the shares of the targeted stocks in order to reap the benefit of the increased market price when they sold their own shares.[3] The stated purpose of the scheme was <u>not</u> to obtain money from the persons receiving the voicemail messages, but rather to drive up the market price of the stocks. Thus, it is clearly the "market" or "the investing public" that the Government is really claiming was the intended victim of the alleged wire fraud. It is, of course, obvious that "the market" and the "investing public" are neither natural nor corporate "persons" and do not own

---

[3] Although it should be noted that the indictment does not allege that either Mr. or Mrs. Boling engaged in any stock transactions in the affected stocks, because in fact neither of them owned or traded any of the affected stocks.

8

property. Thus, they cannot be the victim of a mail or wire fraud. That charge simply will not lie based on these facts. *See McNally*, 483 U.S. 350 (1987).

### B. Failure of indictment to allege that the defendants intended to obtain money or property

The indictment here is also fatally flawed as to the wire fraud charges because it fails to allege the required element that the defendants' alleged scheme was intended <u>to obtain money or property from another</u>. Although the indictment states that legal element in Paragraph 11(B) by parroting the language of Section 1343, there are no factual allegations in the indictment that go to that element. In no paragraph does there appear any assertion that the defendants intended to obtain any identified property from anyone; nor is there any paragraph that asserts that the defendants intended to obtain money from anyone. Factual assertions on this element are simply absent altogether. Without those allegations, the simple assertion of the statutory language is insufficient. *See Nance*, 533 F.2d at 701.

The closest that the indictment comes to stating a factual basis for this necessary legal element is in Paragraph 12, which contains a description of the goals of the alleged conspiracy, and states that the defendants acted to "unlawfully enrich themselves." However, one can obviously "unlawfully enrich" oneself in a multitude of ways that do not constitute obtaining property or money from another as understood under Section 1343. Here, the way in which the Government apparently asserts the defendants "unlawfully enriched" themselves was as a result of the alleged securities fraud violations, not by obtaining property or money from another. Paragraph 12 goes on to state that the unlawful enrichment was a result

9

of "a scheme to artificially inflate the market price of and market demand for the common stock of the following companies, and to fraudulently induce investors to purchase shares of the common stock of the following companies . . ." As there is no allegation that any "investors" purchased shares from these defendants (which cannot be alleged since none of them owned any such shares), neither of these descriptions of the alleged scheme represents an allegation that the defendants intended <u>to obtain money or property from another</u>.  And, as noted, no other paragraph in the indictment alleges that the defendants intended to obtain any form of property or any money from anyone either.  As the indictment is silent as to a required element of wire fraud, it is legally insufficient on that statutory charge.  Thus, the wire fraud counts, and the part of the conspiracy count that is related to wire fraud, must be dismissed.

    III.    *Conclusion*

While this case may be properly alleged as a securities fraud case, it is not a wire fraud case.  The indictment does not and cannot contain an allegation that the defendants intended to defraud a particular victim or class of victims of money or property, only that they intended to affect the market price of stocks by using an allegedly deceitful message.  And, the indictment does not allege that the defendants intended to obtain money or property from anyone.  As such, the indictment is defective as to the wire fraud counts, and Counts Three through Nine, inclusive, and the portion of Count One relating to wire fraud should be dismissed with prejudice.

Respectfully submitted,

/s/ Leslie McAdoo
Leslie McAdoo
Bar # 456781
1140 19th St. NW, Suite 602
Washington, DC 20036
(202) 293 0534 telephone
(202) 318-3005 facsimile

Counsel for Anna Boling

## CERTIFICATE OF SERVICE

I hereby certify that, on this 26th day of April 2007, a copy of the foregoing Motion to Dismiss was served electronically to:

Jonathan Barr
Assistant United States Attorney
555 4th St., NW
Washington, DC 20530

Robert O. Switzer
111 Soledad Street
Suite 1200
San Antonio, TX 78205

Thomas Abbenante
1919 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006


/s/ Leslie McAdoo
Leslie McAdoo