UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | Cr. No.  06-228-01 (ESH/JMF) |
| | ) | 06-228-02 (ESH/JMF) |
| Jeffrey S. Mills, | ) | 06-228-03 (ESH/JMF) |
| Roderic L Boling, and | ) | |
| Anna Boling. | ) | |
| _____ | ) | |

<u>DEFENDANT ANNA BOLING'S
MOTION IN OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE* TO
PRESENT EVIDENCE OF THE FINANCIAL STATUS OF DEFENDANTS ANNA
AND RODERIC BOLING</u>

Defendant Anna Boling respectfully opposes the Government's Motion *in limine* to Present Evidence of the Financial Status of Defendants Anna and Roderic Boling. While conceptually, this evidence may be relevant, the Government has not set forth a factual predicate supporting its relevance in this case. In addition, the evidence with respect to the <u>reason</u> for the termination of the Direct TV contract with Direct Activation is irrelevant and unduly prejudicial and should be excluded.

    I.    *The Government Has Failed to Allege Facts Giving Rise to the Reasonable Conclusion that the Bolings' Financial Situation was a Motive for the Alleged Fraud*

The Defendant does not dispute that—as a conceptual matter—evidence of an adverse change in financial circumstances prior to an alleged fraud can be relevant evidence of motive and intent to engage in the fraud. However, in order for this type of evidence to be probative as to motive and intent, the change in financial circumstances must arise *before* the alleged fraudulent conduct is committed. If

1

defendants are not experiencing any financial difficulty prior to engaging in the conduct, then it cannot reasonably be concluded that their motive to engage in the conduct arose from any financial difficulty. Here, the Government has failed to show that the Defendants' financial situation became dire before the alleged fraudulent conduct was committed.

The Government, in its motion claims that the alleged fraudulent voicemail messages were delivered in or about late July 2004 through August 2004. (Gov't Mot. *in limine* at 1.) In fact, the voicemail campaigns were conducted between July 25, 2004 and August 18, 2004. The Government also alleges that at "about the same time" the Defendants experienced unusual cash flow problems, but fails to show if these cash flow problems <u>preceded</u> the alleged fraudulent activity. *Id.* at 1-2. Specifically, the Government points to the termination of a contract by Direct TV with Direct Activation. *Id.* at 3. However, that termination, according to the Government's own papers, occurred on July 30, 2004, obviously after the voicemail campaign had already been formulated and had begun. (Gov't Mot. *in limine* at 3.) The contract termination therefore is of dubious probative value as evidence of a financial crisis existing <u>before</u> the alleged fraudulent conduct.

Similarly, while the Government alleges that creditors instituted law suits against Direct Activation, it merely asserts that these were "[n]ear in time to when the Bolings' (and Mills') fraud occurred." (Gov't Mot. 3.) Whether "near in time" means before the alleged fraud or after it was already begun or completed is unclear. Neither does the Government specify what the scope of the Bolings'

2

personal liability was for the debts of Direct Activation, which was the dba name of a Florida incorporated entity.

Finally, the Government asserts that the Bolings' credit card accounts reflected rising balances beginning in the summer of 2004, and that after their divorce—in July 2005—the Defendants filed for bankruptcy in October of 2005 representing that they had significant outstanding balances owed to creditors. (Gov't Mot. 3.) There is no allegation made however of whether these debts arose before the conduct charged in this case or thereafter. Simply because the debts began to arise in the "summer of 2004" does not show that they predated the campaign in late July and early August, or that they were so serious by that time that they would have motivated the alleged fraudulent conduct.

In all, the Government simply alleges in its motion that starting sometime in the summer of 2004 the Bolings' experienced a significant change in their financial fortunes and "at the same time" they committed the alleged fraudulent conduct. (Gov't Mot. 5-6.) There is no showing, however, that the alleged change in their financial situation predated the alleged fraud, thus giving rise to motive to commit the very serious offenses here. Without this showing this evidence will not be probative of a motive or intent to commit the conduct because a financial difficulty which arose afterward cannot be a motive for prior actions. Conversely, the evidence will be highly prejudicial to the defense as it may improperly allow the jury to draw the inference that the Defendants had criminal motive when they did not.

The Government argues that the Bolings' had clairvoyance to foresee "the onset of significant personal and business debts coming their way." (Gov't Mot. 5.) However without evidence that any significant financial change occurred <u>before</u> the alleged fraud, it is not reasonable to assert that the Defendants could have foreseen such significant future problems, which would then induce them to engage preemptively in the alleged fraudulent conduct here.

Therefore, before introducing any evidence of the Defendants' financial situation, the Government should be required to make a specific factual proffer of the Defendants' financial situation predating the alleged fraudulent actions in order for this Court to determine if a factual basis exists from which the jury can reasonably draw the inferences and conclusions argued by the Government. Without that showing, the evidence sought to be adduced by the Government should be excluded.

## II.   *Evidence of the Reason for the Direct TV Contract Termination is Inadmissible as Irrelevant and unduly Prejudicial*

While the evidence of the financial impact of the termination of the Direct TV contract might be relevant if it can be shown to have been part of the Defendants' motive for the alleged fraudulent conduct, the <u>reason</u> for the contract termination is both irrelevant under Fed. R. Evid. 401 and inadmissibly or unduly prejudicial under Fed. R. Evid. 403, and 404(b). The <u>fact</u> of the termination would be enough to show any change in the Defendants' financial situation as a result of this contract loss, without regard to what the reason for the termination might have been. Why the contract was terminated simply has no bearing on any resulting change in the

Defendant's financial situation and thus does not have a tendency to make the existence of any fact of consequence in this action more or less probable. It is therefore irrelevant under Rule 401.

In addition to being irrelevant, this information is unduly prejudicial to the Defendants. If the contract termination is being offered by the Government merely to show that the Defendants experienced a negative change in their financial situation, that can be shown by establishing the fact of the termination itself. However, showing that the Defendants' company "breached" its contractual obligations to Direct TV will result in undue prejudice to the Defendants because there is a grave danger that the jurors may confuse this issue with the questions of alleged fraud in this case. If the jury hears that Direct Activation "breached" a prior contract for voicemail distribution with Direct TV, it could draw the conclusion that the Defendants are the kind of individuals who engage in fraudulent conduct. In addition, any suggestion to the jury that the relationship between Direct Activation and Direct TV soured because of "improper" conduct may very well confuse the jury into thinking that the Direct TV advertising campaign was "illegal" when no such determination has ever been made. As such there is clear danger that this evidence will result in undue prejudice to the Defendants, while having no clear probative value to the Government's case. It should therefore be excluded under Rule 403 and 404(b).

    III.    *Conclusion*

In order for the evidence that the Government seeks to introduce of the financial status of the Defendants to be relevant to motive to commit the alleged fraudulent acts, this evidence must show a change in a financial status that arose before the acts at issue were committed. Therefore, before introducing this evidence at trial, the Government should be required to make a factual showing that the Defendants' financial situation had changed prior to July 25, 2004, so that the Court may resolve whether the jury can reasonably conclude that their financial situation gave rise to a motive to commit fraud. However, the evidence as to <u>why</u> the Direct TV contract was terminated should be excluded as both irrelevant and unduly prejudicial to the Defendants, even if evidence of the financial situation is presented to the jury.

                Respectfully submitted,

                /s/ Leslie McAdoo
                Leslie McAdoo
                Bar # 456781
                1140 19th St. NW, Suite 602
                Washington, DC 20036
                (202) 293 0534 telephone
                (202) 318-3005 facsimile

                Counsel for Anna Boling

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 14th day of May 2007, a copy of the foregoing Motion in Opposition to the Government's Motion *in limine* to Present Evidence of the Financial Statutes of Defendants Anna and Roderic Boling was served electronically to:

Jonathan Barr
Assistant United States Attorney
555 4th St., NW
Washington, DC 20530

Robert O. Switzer
111 Soledad Street
Suite 1200
San Antonio, TX 78205

Thomas Abbenante
1919 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006

/s/ Leslie McAdoo
Leslie McAdoo