UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| v. | ) | Cr. No. | 06-228-01 (ESH/JMF) |
| | ) | | 06-228-02 (ESH/JMF) |
| JEFFREY S. MILLS, | ) | | 06-228-03 (ESH/JMF) |
| RODERIC L. BOLING, and | ) | | |
| ANNA BOLING. | ) | | |
| | ) | | |

MOTION TO EXCLUDE EVIDENCE
REGARDING ALLEGED AMOUNT OF TOTAL LOSS

Defendant Anna Boling, through undersigned counsel, moves the Court, pursuant to Fed.R.Evid. 403, to exclude from trial any references to, or evidence regarding, the amount of the loss alleged by the United States to have been caused by the alleged fraudulent scheme in this case. In support of this motion, Defendant relies on the following points and authorities.

The Government need not prove that there was any loss, much less the amount of the loss, in order to establish the charges in the indictment. The amount of the loss will be highly relevant to the issue of sentencing in the event that there is a conviction. *See* USSG § 2B1.1. But it is of little or no relevance to establishing the charges at trial. *See United States v. Bradstreet*, 135 F.3d 46, 54 (1st Cir. 1998) ("we have some trouble seeing how the amount of loss was relevant to the materiality of the alleged false statements or [defendant's] knowledge of the scope of the conspiracy").

If the amount of the loss was uncontested or indisputable, a court might nonetheless admit evidence of that loss as part and parcel of the circumstances of

1

the alleged offense. In this case, however, the amount of the loss is uncertain at this juncture and very much contested.

The Ninth Circuit recently has cautioned that measurement of loss is highly complex when the court confronts an alleged "pump-and-dump" stock fraud scheme involving otherwise legitimate companies, which is the situation presented here. In such a case "the court must disentangle the underlying value of the stock, inflation of that value due to the fraud, and either inflation or deflation of that value due to unrelated causes." *United States v. Zolp*, 479 F.3d 715, 719 (9th Cir. 2007).

In this case, the Government has asserted that the loss exceeds $7 million but, despite defense requests, has refused to disclose how it has gone about computing that figure. The defense disputes whether the loss attributable to the alleged offenses is anywhere near that amount. Some preliminary computations by the defense based on the approximate trading volumes and the rise and fall in the stock price during the periods relating to the telephone promotions suggest that the loss is, at most, a fraction of that amount.

Moreover, the impact of other factors on the rise and fall of the stock prices must be taken into account. For example, there is undisputed evidence that a key element of most or all of the voice mail messages at issue in this case were true and could have induced persons to purchase the stocks.

Furthermore, these promising developments for the stocks were being contemporaneously advertised by means separate and apart from the voice mail campaigns at issue here. For example, the stock which had by far the greatest market activity and total rise and fall was Power3 Medical Products, Inc., which

had developed and filed for a patent on a biomarker for early detection, monitoring, and staging of a broad range of diseases including breast cancer, neurodegenerative diseases and other diseases.  The company announced this development in a press release issued August 4, 2004, and disclosed it again in a quarterly filing with the SEC on August 17, 2004.  In addition, there was media coverage, including Internet coverage, of this development.

      The Government alleges that, as part of the alleged offenses, one voicemail campaign for Power3 stock ran from August 11 – 17, 2004, and a different one ran on August 18, 2004, both of which referenced the new patent application.  But, under these circumstances, it cannot be reasonably concluded that any "run up" in the market price for Power3 stock during the time period in issue is attributable exclusively, or even primarily, to the voicemail campaign.  It would be speculative and unfairly prejudicial to the defendants for the Government to be permitted to introduce evidence of the alleged "total market loss" in this stock and to argue to the jury that it is attributable to defendants' conduct.

      The same scenario holds true for most of the other stocks that were promoted by the voicemail campaigns at issue here.  It is also quite possible that persons interested in increasing the price of the stocks in issue engaged in purchases and sales of those stocks in order to affect the apparent market trends.  Further, the volume of trading in the stocks at issue is misleading because it includes persons who made money on the trades, and purchases by brokerage houses on behalf of multiple customers that are followed by subsequent transactions between the brokerage house and the individual clients, with the effect that multiple reported

3

transactions represent a much smaller number of actual sales and purchases by customers intending to hold the stocks.

In addition, there are comparable problems regarding the fall of the share prices. There was substantial publicity (evidenced in the Government's proffered exhibits) about the alleged fraudulent marketing of these securities, based on the SEC's issuance of investor alerts about the voicemails. This evidently caused substantial sell-offs of the stocks. But, since the stocks at issue were shares of legitimate companies that legitimately had promising prospects, it is not at all clear whether the SEC alerts and attendant publicity caused a "market correction" or, instead, an over-reaction.

All of these issues remain to be sorted out and, until they are, any evidence offered by the Government regarding its view of the amount of loss caused by the alleged criminal activity is pure speculation. There is no need to expand the length and scope of the trial by opening up a complex, collateral contest regarding the amount of the alleged loss. At the same time, it would clearly be unduly prejudicial to the defense to permit the Government to bandy about inflated and unreliable loss figures in front of the jury. Both of these concerns are amplified as there is no need for the Government to establish the total amount of the alleged loss as an element of the offenses, and any evidence regarding the amount of the total loss is of little or no probative value in proving the essential elements.

The defense therefore asks the Court to exclude from trial any evidence of, or reference to, the total amount of the loss alleged by the United State to have been caused by the alleged fraudulent scheme in this case. Exclusion of such evidence is

warranted under Fed.R.Evid. 403 because the risk of unfair prejudice to the defense and confusion of issues before the jury far outweighs whatever scant probative value this evidence may have.

To be clear, the defense is <u>not</u> arguing that the Government may not elicit testimony from particular witnesses about (1) whether the witness received one of the telephone voice messages in issue; (2) whether the witness bought stock in reliance on that message; and (3) whether that witness lost money on that stock and, if so, how much. Adducing evidence about the loss that particular witnesses allegedly suffered is permissible. What is impermissible is for the Government to extrapolate a global loss figure in front of the jury that is inflammatory, speculative and unreliable.

WHEREFORE, it is respectfully requested that this motion be granted.

Respectfully submitted,

      /s/ Leslie McAdoo
Leslie McAdoo
Bar # 456781
1140 19th St. NW, Suite 602
Washington, DC 20036
(202) 293-0534  telephone
(202) 318-3005  facsimile
Counsel for Anna Boling

## CERTIFICATE OF SERVICE

I hereby certify that, on this 14th day of June 2007, a copy of the foregoing Motion to Exclude Evidence Regarding the Alleged Amount of Total Loss was served electronically to:

>Jonathan Barr
>Assistant United States Attorney
>555 4th St., NW
>Washington, DC 20530
>
>Robert O. Switzer
>111 Soledad Street
>Suite 1200
>San Antonio, TX 78205
>
>Thomas Abbenante
>1919 Pennsylvania Avenue, NW
>Suite 200
>Washington, DC 20006

>/s/ Leslie McAdoo
>Leslie McAdoo